UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| KIMBERLY S. HAMMETT, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. D/B/A SPECTRUM,<br><br>Defendant. | Case No.1:21-cv-00815 |

## CLASS ACTION COMPLAINT

**NOW COMES**, KIMBERLY S. HAMMETT, individually, and on behalf of all others similarly situated, by and through her undersigned counsel, complaining of CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking damages as well as injunctive relief for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp.,* 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

1

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. KIMBERLY S. HAMMETT ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in this judicial district.

6. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

7. CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM ("Defendant") is a corporation organized under the laws of the State of Delaware.

8. Defendant is a prominent cable and internet service provider. Defendant provides cable and internet services to more than 31 million customers in 41 states, including the State of Ohio.

9. Defendant maintains its principal place of business in Stamford, Connecticut.

10. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

11. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 8573.

12. At all times relevant, Plaintiff's number ending in 8573 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

14. At no point in time did Plaintiff have an account or any other form of business relationship with Defendant.

15. In January 2021, Defendant began placing prerecorded calls ("robocalls") to Plaintiff's cellular phone in an attempt to collect an outstanding balance owed by an unknown third party by the name of "Jacob Baker."

16. Upon answering Defendant's calls, Plaintiff was greeted with a prerecorded message stating either: (1) *"This call is for Jacob Baker. Please give Spectrum a call back at 844-206-9035 regarding your account information"* or (2) *"This is Spectrum looking for Jacob Baker. Your service has been discontinued, please contact us at 844-206-9035."*

17. In calls that Plaintiff did not answer, Defendant would leave voicemails on Plaintiff's cellular phone containing the same prerecorded messages described above.

18. Frustrated with Defendant's robocalls, Plaintiff contacted Defendant to determine the reason for Defendant's calls.

19. Plaintiff explained to Defendant's representative that she did not know who Jacob Baker was and did not understand why she was receiving these calls.

20. Plaintiff explained that the calls were irritating her because they were coming in at such a high rate.

21. Plaintiff explained she has never had an account with Defendant and requested that the calls cease.

22. In response, Defendant's representative assured Plaintiff that Defendant's robocalls would cease.

23. Despite Plaintiff's request and Defendant's assurance that the calls would cease, Defendant continued placing robocalls to Plaintiff's cellular phone number.

24. On March 18, 2021, infuriated with Defendant's invasive robocalls, Plaintiff placed a call to Defendant and was connected with Defendant's representative "Kyle."

25. During this call, Plaintiff provided Kyle with her name, address, and phone number. Kyle was unable to locate an account for Plaintiff and advised Plaintiff that she is receiving calls from Defendant because someone used Plaintiff's phone number to open an account with Defendant.

26. Kyle assured Plaintiff that the situation was resolved and sent Plaintiff a one-time confirmation code of the conversation that allegedly established that Plaintiff would no longer receive Defendant's robocalls.

27. On March 19, 2021, Defendant placed three (3) robocalls to Plaintiff's cellular phone number.

28. On March 20, 2021, Defendant placed two (2) robocalls to Plaintiff's cellular phone number.

29. Despite Defendant's repeated assurances that its robocalls would cease, Defendant continues to place daily robocalls to Plaintiff's cellular phone number, with as many as 7 robocalls in a 24-hour period.

30. In total, Defendant placed no less than one-hundred (100) robocalls to Plaintiff's cellular phone number utilizing a prerecorded voice in an effort to contact Jacob Baker.

31. Plaintiff has repeatedly requested that Defendant's phone calls cease to no avail.

32. At no point in time did Plaintiff provide her cellular phone number to Defendant or otherwise consent to receiving phone calls from Defendant.

4

## DAMAGES

33. Plaintiff significantly values her privacy and solitude.

34. In light of the fact that Plaintiff does not and has never had a business relationship with Defendant, Defendant's phone calls were highly intrusive and infuriating.

35. Defendant's robocalls were especially troubling in light of (1) Plaintiff's repeated requests that the calls cease and (2) Defendant's repeated assurances that the calls would cease.

36. Defendant's intrusive robocalls invaded Plaintiff's privacy and have caused Plaintiff actual damages, including but not limited to, aggravation that accompanies unsolicited robocalls, increased risk of personal injury resulting from the distraction caused by the robocalls, wear and tear to Plaintiff's cellular phone, loss of battery charge, loss of concentration, loss of time calling Defendant to request that the calls cease, nuisance, and wasting Plaintiff's time each time Defendant caused Plaintiff's cellular phone to ring.

37. Moreover, each time Defendant placed a robocall call to Plaintiff's cellular phone number, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize her cellular phone while her phone was ringing.

38. Due to Defendant's refusal to comply with Plaintiff's requests that the calls cease, Plaintiff was forced to retain counsel to compel Defendant to cease its intrusive conduct.

## CLASS ALLEGATIONS

39. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

40. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

All persons residing in the United States: (a) who do not have an existing account with Defendant; (b) to whom Defendant, or a third party acting on Defendant's behalf, placed a phone call to his/her cellular phone number; (c) utilizing an artificial or prerecorded voice; (d) in connection with an outstanding balance allegedly owed by a third party; (e) at any time in the period that begins four years before the date of the filing of the original complaint through the date of class certification.

41. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

**A.  Numerosity**

42. The exact number of members of the Putative Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

43. Upon information and belief, Defendant made robocalls calls to thousands of individuals that fall within the definition of the Putative Class.

44. Members of the Putative Class can be objectively identified from the records of Defendant and any affiliated vendors to be gained through targeted discovery.

**B.  Commonality and Predominance**

45. There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class.

### C. Typicality

46. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's conduct.

### D. Superiority and Manageability

47. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

48. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

49. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

50. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E. Adequate Representation

51. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

52. Plaintiff has no interests antagonistic to those of the Putative Class and Defendant has no defenses unique to Plaintiff.

53. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

### COUNT I
**Violations of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)**
**(On behalf of Plaintiff and members of the Putative Class)**

54. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

55. Defendant violated 47 U.S.C. § 227 (b)(1)(A)(iii) by placing or causing to be placed no less than one-hundred (100) non-emergency calls to Plaintiff's cellular telephone number, utilizing an artificial or prerecorded voice, without Plaintiff's consent.

56. As pled above, Defendant utilized an artificial or prerecorded voice that automatically played upon Plaintiff answering the call or the call reaching Plaintiff's voicemail.

57. As pled above, Plaintiff has never provided her cellular phone number to Defendant or had any business relationship with Defendant.

58. Accordingly, it is clear that Defendant had actual knowledge it did not have consent to place robocalls to Plaintiff's cellular phone number, but did so in utter disregard of the TCPA

59. As pled above, Plaintiff was harmed by Defendant's robocalls to her cellular phone.

60. Upon information and belief, Defendant does not maintain policies and procedures designed to ensure compliance with the TCPA.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Putative Class, request the following relief:

- A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;
- B. an order finding that Defendant violated the TCPA;
- C. an order enjoining Defendant from placing further violating calls to non-customers;
- D. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each such violation;
- E. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each such violation; and

F. an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Date: April 16, 2021									Respectfully submitted,

**KIMBERLY S. HAMMETT**

By: */s/ Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8180
mbadwan@sulaimanlaw.com