**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

KIMBERLY S. HAMMETT, individually
and on behalf of all others similarly situated,

                    Plaintiff,

      v.

CHARTER COMMUNICATIONS, INC.
D/B/A SPECTRUM,

               Defendant.

Case No. 21-CV-00815

Judge Solomon Oliver, Jr.

**<u>DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO
STAY PROCEEDINGS AND BRIEF IN SUPPORT</u>**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF THE QUESTIONS PRESENTED ................................................... 2

III.  THE COURT SHOULD COMPEL ARBITRATION ................................................... 2

    A.    Background Relevant to Motion to Compel Arbitration ...................................... 2

        1.    Plaintiff Accepted and Separately Acknowledged Charter's
                Agreement. ............................................................................................... 2

        2.    The Agreement and Acknowledgment Contain Conspicuous
                Arbitration Terms and Delegate Arbitrability. ........................................ 3

        3.    Plaintiff Chose Not to Opt Out of Arbitration Despite Ample
                Opportunity. ............................................................................................. 4

        4.    Plaintiff Violated Her Agreement to Arbitrate by Filing this Suit. ............. 5

    B.    The Applicable Legal Standard: The FAA Applies and Strongly Favors
            Arbitration. ........................................................................................................ 5

    C.    The Court Should Compel Arbitration and Dismiss the Case. ............................ 6

        1.    The Parties Agreed to Arbitrate. ............................................................. 7

        2.    The Parties Delegated the Threshold Issues of Arbitrability to the
                Arbitrator. ................................................................................................ 8

        3.    In Any Event, The Arbitration Terms Are Enforceable and This
                Dispute Falls Squarely Within Their Scope. ........................................... 9

IV.   ALTERNATIVELY, THE COURT SHOULD STAY THE CASE ............................. 12

    A.    Background Relevant to Motion to Stay ........................................................... 12

        1.    Plaintiff Alleges One Claim Based on the TCPA's Robocall
                Restriction. ............................................................................................. 12

        2.    The Supreme Court's Holding in *AAPC*. ............................................. 13

        3.    The Sixth Circuit's Pending Decision in *Lindenbaum*. ........................ 13

    B.    The Applicable Legal Standard: The *Landis* Doctrine Compels a Stay Here. ..... 14

    C.    If the Court Does Not Compel Arbitration, All Relevant Factors Favor a Stay... 15

        1.    *Lindenbaum* Could Dispose of This Entire Case. .................................. 15

        2.    A Stay Will Promote Judicial Efficiency and Preserve Judicial
                Resources. .............................................................................................. 17

        3.    A Stay Furthers the Interests of the Public and Non-Parties. .................. 17

        4.    A Stay Poses No Risk of Damage or Harm to Plaintiff, but Defendant
                Will Suffer Hardship and Inequity If This Action Is Not Stayed. ........... 18

V.    CONCLUSION ........................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AT&T Mobility Servs., LLC v. Boyd*,
   2020 WL 6203831 (N.D. Ohio Oct. 22, 2020) ...................................................................8

*Bakery, Confectionery, Tobacco Workers & Grain Millers v. Kellogg Co.*,
   904 F.3d 435 (6th Cir. 2018) ...........................................................................................11

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ....................................................1, 2, 12, 13, 14, 16, 19

*Blanton v. Domino's Pizza Franchising LLC*,
   962 F.3d 842 (6th Cir. 2020) ........................................................................................6, 9

*Bruster v. Uber Techs. Inc.*,
   2016 WL 4086786 (N.D. Ohio Aug. 2, 2016) .............................................................10

*Carey v. Uber Techs., Inc.*,
   2017 WL 1133936 (N.D. Ohio Mar. 27, 2017) .......................................................5, 7, 8

*Clark v. C.R. Bard, Inc.*,
   No. 4:18-CV-440, 2018 WL 3222642 (N.D. Ohio July 2, 2018) ..........................19

*Compressor Eng'g Corp. v. Thomas*,
   2016 WL 438963 (E.D. Mich. Feb. 3, 2016) ..............................................................16

*Cova v. Charter Commc'ns, Inc.*,
   2017 WL 666097 (E.D. Mo. Feb. 17, 2017)..................................................................9

*Creasy v. Charter Commc'ns, Inc.*,
   489 F. Supp. 3d 499 (E.D. La. 2020) ......................................................13, 16, 17

*Cunningham v. Matrix Fin. Servs.*,
   __ F. Supp. 3d ___, 2021 WL 1226618 (E.D. Tex. 2021)....................................13, 14, 16, 17

*Dantz v. Am. Apple Group, LLC*,
   123 Fed. Appx. 702 (6th Cir. 2005).................................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................................................6

*Dickson v. Direct Energy, LP*,
   No. 5:18-cv-182, Dkt. 133 (N.D. Ohio Jan. 15, 2021) ...........................................16

*Drozdowski v. Citibank, Inc.*,
2016 WL 4544543 (W.D. Tenn. Aug. 31, 2016) ...................................................................11

*Eberhard v. Chicago Title Ins. Co.*,
2012 WL 13029534 (N.D. Ohio Mar. 31, 2012) (Oliver, S.) ..................................................12

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*,
No. CV 15-04767-AB (JCX), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015) .......................16

*Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*,
2010 WL 55973 (N.D. Ohio Jan. 5, 2010)........................................................................15, 18

*Goomansingh v. ICC TV, Inc.*,
No. 19 V.I. 26U, 2019 WL 965239 (V.I. Super. Ct. Feb. 25, 2019) .........................................5

*Grayned v. City of Rockford*,
408 U.S. 104 (1972).................................................................................................................16

*Hart v. Charter Commc'ns, Inc.*,
2017 WL 6942425 (C.D. Cal. Nov. 8, 2017), *aff'd*, 814 F. App'x 211 (9th Cir.
2020) ........................................................................................................................................10

*Hartman v. Charter Commc'ns, Inc.*,
2015 WL 1756437 (W.D.N.C. Apr. 17, 2015) ..........................................................................9

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
139 S. Ct. 524 (2019)............................................................................................................6, 9

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
350 F.3d 568 (6th Cir. 2003) ...................................................................................................10

*Klein v. City of San Clemente*,
584 F.3d 1196 (9th Cir. 2009) .................................................................................................17

*Lacy v. Comcast Cable Commc'ns, LLC*,
2020 WL 2041755 (W.D. Wash. Apr. 28, 2020).....................................................................19

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)............................................................................................................14, 15

*Lindenbaum v. Realgy*,
497 F. Supp. 3d 290 (N.D. Ohio 2020)...........................................................................2, 12, 13

*Lindenbaum v. Realgy, LLC*,
Case No. 20-4252 (6th Cir. Jan. 25, 2021) .........................................................................1, 14

*McCormick v. Citibank, NA*,
2016 WL 107911 (W.D.N.Y. Jan. 8, 2016).............................................................................11

*McGee v. Armstrong*,
941 F.3d 859 (6th Cir. 2019) ...................................................................6, 11

*Michael v. Ghee*,
325 F. Supp. 2d 829 (N.D. Ohio 2004) .................................................15, 17, 18

*Milan Exp. Co. v.* Applied *Underwriters Captive Risk Assur. Co.*,
590 F. App'x 482 (6th Cir. 2014) .....................................................................8

*Moran v. Charter Commc'ns, Inc.*,
2020 WL 5833640 (C.D. Cal. June 11, 2020) ..............................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 103 S. Ct. 927 (1983) ...................................................................11

*NCR Corp. v. Korala Assocs., Ltd.*,
512 F.3d 807 (6th Cir. 2008) ..........................................................................6

*Nuccio v. Duve*,
2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015) .............................................18

*Ohio Env. Council v. U.S. Dist. Court*,
565 F.2d 393 (6th Cir. 1977) ..........................................................................15

*Prizler v. Charter Commc'ns, LLC*,
2019 WL 2269974 (S.D. Cal. May 28, 2019)..............................................9

*Ranazzi v. Amazon.com, Inc.*,
46 N.E.3d 213 (Ohio Ct. App. 2015) ..............................................................7

*Ranchers-Cattlemen Action Legal Fund v. Perdue*,
2017 WL 2671072 (D. Mont. June 21, 2017), *aff'd sub nom*, 718 F. App'x
541 (9th Cir. 2018)..........................................................................................17

*Rayess v. Educ. Comm'n for Foreign Med. Graduates*,
134 Ohio St. 3d 509 (2012)..............................................................................7

*Rent-A-Ctr., W., Inc. v. Jackso*n,
561 U.S. 63 (2010)............................................................................................6

*Reo v. Palmer Admin. Servs.*,
770 F. App'x 746 (6th Cir. 2019) .....................................................................11

*Ricketts v. Consumers Energy Co.*,
2017 WL 2351731 (E.D. Mich. May 31, 2017)..............................................16

*Saunders v. Dyck O'Neal, Inc.*,
No. 1:17-CV-003350-GJQ-RSK, Dkt. 202 (W.D. Mich. May 20, 2021) ............16

*Schartel v. OneSource Tech., LLC,*
    2015 WL 7430056 (N.D. Ohio Nov. 17, 2015) ...........................................................15, 18

*Shearson/Am. Exp., Inc. v. McMahon,*
    107 S. Ct. 2332 (1987) ...........................................................................................5, 6

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ...........................................................................................................6

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ..............................................................................................16

*In re Sprouts Farmers Mkt., Inc. Employee Data Sec. Breach Litig.,*
    2017 WL 3051243 (D. Ariz. May 24, 2017) ............................................................18

*Stachurski v. DirecTV, Inc.,*
    642 F. Supp. 2d 758 (N.D. Ohio 2009)......................................................................6

*Stone v. Sterling Infosystems, Inc.,*
    2015 WL 4602968 (E.D. Cal. Jul. 29, 2015) ...........................................................19

*Stout v. J.D. Byrider,*
    228 F.3d 709 (6th Cir. 2000) ................................................................................5, 6

*Tokio Marine Specialty Ins. Co. v. S. Chicago Prop. Mgmt. Co.,*
    2020 WL 5877598 (N.D. Ohio Oct. 2, 2020) ...........................................................9

*Tovar v. Hospital Housekeeping Sys.,*
    2009 WL 10672526 (C.D. Cal. Nov. 2, 2009) ........................................................19

*Uszak v. AT & T Mobility Servs. LLC,*
    658 F. App'x 758 (6th Cir. 2016) ......................................................................7, 10

*Whaley v. T-Mobile, USA, Inc.,*
    2013 WL 5155342 (E.D. Ky. Sept. 12, 2013) .........................................................10

*Wright et al. v. EXP Realty, LLC,*
    No. 6:19-CV-01851, D.E. 99 (M.D. Fla. Feb. 7, 2020) ..........................................19

**Statutes**

47 U.S.C. § 227(b) .........................................................................................1, 12, 13, 17

# I.  **INTRODUCTION**

Plaintiff Kimberly Hammett is a Charter customer; she purchases cable television and internet services under Charter's "Spectrum" brand name.  When she activated services on Spectrum's website, Plaintiff agreed to arbitrate disputes with Charter individually on a non-class basis—and to delegate to the arbitrator threshold issues of arbitrability.  Plaintiff also separately acknowledged her agreement to arbitrate all disputes with Charter.  Plaintiff violated the plain terms of her agreement by filing this putative class action in federal court alleging that Charter violated the Telephone Consumer Protection Act ("TCPA") by calling her.  And when Charter sent a detailed letter attaching Plaintiff's agreement to arbitrate and her acknowledgment of that agreement, her lawyers refused to respond, much less move this dispute to the proper forum.

Under binding authority, the Court should grant Charter's motion to compel arbitration and dismiss this lawsuit (which is meritless in any event).  First, it is beyond dispute that: (a) Plaintiff agreed to arbitrate by accepting terms and conditions on Spectrum's website; and (b) Plaintiff chose not to opt out of arbitration, despite having ample opportunity to do so.  Second, the Parties delegated all threshold issues of arbitrability (including validity and scope) to the arbitrator.  As the Sixth Circuit and this Court have held, the arbitrator (not this Court) must therefore resolve any issues beyond contract formation, including issues about the scope and applicability of the arbitration provision.  Third, even if the Court could consider issues of arbitrability, this dispute is arbitrable because the arbitration terms are enforceable and Plaintiff's dispute falls squarely within their scope.  The Court should accordingly compel arbitration, end its inquiry, and dismiss this action.

In the alternative, Defendant moves to stay Plaintiff's TCPA claim pending the Sixth Circuit's ruling in *Lindenbaum v. Realgy, LLC*, Case No. 20-4252.  Plaintiff's sole claim is that Charter violated the TCPA's robocall restriction, 47 U.S.C. § 227(b)(1)(A)(iii), because it allegedly called her cell phone using an artificial or pre-recorded voice without her consent.  But the Supreme Court held that provision of the TCPA was an unconstitutionally discriminatory speech restriction under the First Amendment in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140

S. Ct. 2335, 2346 (2020) ("*AAPC*").  In light of *AAPC*, Chief Judge Gaughan dismissed the plaintiff's TCPA claims in *Lindenbaum*, holding that because the TCPA's robocall restriction "was unconstitutional at the time of the alleged violations, this Court lacks [subject matter] jurisdiction over this matter."  *Lindenbaum v. Realgy*, 497 F. Supp. 3d 290, 298 (N.D. Ohio 2020).  The plaintiff in *Lindenbaum* appealed and briefing before the Sixth Circuit is complete.  The Sixth Circuit therefore will soon decide whether Judge Gaughan's conclusion—that the court lacks subject matter jurisdiction over alleged violations of the TCPA's robocall restriction during the period the law was unconstitutional, as here—will be the binding law of this Circuit.  And because the Sixth Circuit's decision could entirely resolve this case, the Court should stay this action in the interest of judicial economy if it does not compel arbitration.

## II.     STATEMENT OF THE QUESTIONS PRESENTED

1.     Should the Court compel arbitration and dismiss this case, where Plaintiff entered an agreement to arbitrate that delegated all threshold issues of arbitrability to the arbitrator and separately acknowledged her agreement to arbitrate?

2.     Alternatively, should the Court stay this case pending the Sixth Circuit's ruling in *Lindenbaum*, which will determine whether this Court lacks subject matter jurisdiction because, as Chief Judge Gaughan concluded, the TCPA's robocall restriction was an unconstitutional restriction on speech that violated the First Amendment at the time of the alleged calls?

## III.     THE COURT SHOULD COMPEL ARBITRATION

### A.     Background Relevant to Motion to Compel Arbitration

#### 1.     Plaintiff Accepted and Separately Acknowledged Charter's Agreement.

Charter offers various telecommunications services to subscribers in the State of Ohio, where Plaintiff resides, including, for example, cable television, high speed internet, and telephone services.  (Flores Decl. ¶¶ 5, 10.a.)  Charter provides residential services, including to Plaintiff, under the brand name "Spectrum."  Plaintiff has been a Charter subscriber since November 2019 and has received—and continues to receive—Charter television and internet services at her residence in East Cleveland, Ohio.  (*Id.* ¶ 10.a.)

2

Plaintiff activated new Charter equipment for video and high speed data in October 2020. (*Id.* ¶ 10.b.)  As part of that process, she used Spectrum's website, where she was presented with the Agreement and accepted it by checking a box stating, "I accept these agreements."  (*Id.*)  The Agreement also explains that "[b]y checking" "you acknowledge that you . . . have read and agree to be bound by Charter's policies and terms of service."  (*Id.*, Ex. A at 18.)  The Agreement further provides that activating or using Charter's services, breaking the seal on the box of a self-installation kit, or accepting the agreement online all constitute acceptance.  (*Id.* ¶ 7, Ex. A. at 1 ("[T]he Subscriber's use of Services, and/or any other form of signature of action indicating intention to use (e.g. online acceptance, e-signature or breaking the seal on the box of a self-installation kit, activation of service) are evidence of Subscriber Group's agreement to these General Terms . . . .").)

Not only did Plaintiff enter the agreement with Charter, she acknowledged in a separate document that she had done so by accepting the Spectrum Self-Install Acknowledgment ("Acknowledgment") on Spectrum's website.  (*Id.* ¶ 10.c.)  Her acknowledgment provides, "I acknowledge Spectrum's privacy policy and agree to comply with the terms and conditions of the applicable Spectrum service to which I am subscribing."  (*Id.* ¶ 8, Ex. B.)

## 2. The Agreement and Acknowledgment Contain Conspicuous Arbitration Terms and Delegate Arbitrability.

The Agreement has broad arbitration terms that apply to all disputes between Plaintiff and Charter, including the dispute here.  (*Id.* ¶ 6, Ex. A.)  The Agreement "require[s] the use of arbitration to resolve disputes" and provides that "Spectrum and Subscriber agree to arbitrate disputes and claims arising out of or relating to these General Terms, the Services, the Equipment, or marketing of Services Subscriber has received from Spectrum."  (*Id.*, Ex. A § 29.)  The Agreement also states: "SUBSCRIBER AND SPECTRUM AGREE THAT CLAIMS MAY ONLY BE BROUGHT IN SUBSCRIBER'S INDIVIDUAL CAPACITY AND NOT ON BEHALF OF, OR AS PART OF, A CLASS ACTION."  (*Id.*)

To ensure that subscribers do not miss these terms, the first page of the Agreement

conspicuously states that it contains a "A BINDING ARBITRATION PROVISION, WHICH INCLUDES A WAIVER OF YOUR RIGHT TO BRING CLAIMS AS CLASS ACTIONS." (*Id.*, Ex. A at 1.)  And the Acknowledgment further explains that Plaintiff is subject to "a mandatory arbitration requirement with respect to *all disputes*." (*Id.* ¶ 8, Ex. B (emphasis added).)

Plaintiff and Charter twice agreed to delegate all issues of arbitrability to the arbitrator. First, they expressly agreed to delegate to the arbitrator "all issues . . . including the scope of the arbitration clause." (*Id.* ¶ 6, Ex. A § 29.)  Second, they agreed to submit any dispute to the American Arbitration Association ("AAA") for resolution under the AAA's arbitration rules. (*Id.*) Those rules also delegate to the arbitrator the authority to determine the scope of the arbitration agreement and whether it applies to a particular dispute. *See, e.g.*, AAA Commercial Rule 14(a)-(b), available at https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf.

And Plaintiff not only agreed to arbitrate, she also agreed to first try to resolve all disputes informally, before arbitration. (Flores Decl., Ex. A. § 29.)  If the parties could not resolve the dispute within thirty days, the Agreement permitted her to then proceed to arbitration. (*Id.*)

### 3.     Plaintiff Chose Not to Opt Out of Arbitration Despite Ample Opportunity.

The Agreement informed Plaintiff that she could opt out of arbitration by simply notifying Charter of her wishes. (*Id.*)  Her right to opt out is displayed on the first page of the Agreement in capital letters: "THESE GENERAL TERMS CONTAIN" "THE RIGHT TO OPT OUT OF" "A BINDING ARBITRATION PROVISION." (*Id.*, Ex. A at 1.)  In particular, under the Agreement, "[i]f the Subscriber does not wish to be bound by these arbitration provisions, Subscriber must notify Spectrum in writing within 30 days of (a) the date this arbitration provision becomes effective . . . ." (*Id.*, Ex. A § 29.)

But Plaintiff chose not to opt out of arbitration. (*Id.* ¶ 10.d.)  She let the 30 day opt out period lapse and has received, accepted, and benefited from Charter's services ever since. (*See id.*)  She remains a Charter customer to this day. (*Id.* ¶ 10.a.)

**4.      Plaintiff Violated Her Agreement to Arbitrate by Filing this Suit.**

Plaintiff nevertheless filed this lawsuit despite being notified of the arbitration terms in her Agreement with Charter and separately acknowledging that she is subject to "a mandatory arbitration requirement with respect to *all disputes*" with Charter.  (*Id.* ¶ 8, Ex. B.)  And before she sued, Plaintiff made no attempt to notify Charter of her claims or to informally resolve them, as she was required to do.  (*See id.*)

Charter's counsel therefore sent Plaintiff's counsel a letter in May 2021, requesting that Plaintiff comply with her Agreement by seeking to informally resolve this matter and submitting any unresolved dispute to arbitration.  Charter's letter provided Plaintiff with a copy of the Agreement and advised that Charter would be forced to prepare this motion if Plaintiff refused to comply with the Agreement before then.  Plaintiff failed to respond, forcing Charter to prepare and file this Motion.

**B.      The Applicable Legal Standard: The FAA Applies and Strongly Favors Arbitration.**

The Federal Arbitration Act governs this matter because the Agreements concern the provision of cable, telephone, and internet services, which relate "to interstate commerce." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Goomansingh v. ICC TV, Inc.*, No. 19 V.I. SUPER 26U, 2019 WL 965239, at *6 (V.I. Super. Ct. Feb. 25, 2019) (collecting cases).

Under the FAA, a party to an arbitration agreement may seek to compel arbitration and stay or dismiss further proceedings in federal court.  *Shearson/Am. Exp., Inc. v. McMahon*, 107 S. Ct. 2332, 2337 (1987); *Carey v. Uber Techs., Inc.*, No. 1:16-CV-1058, 2017 WL 1133936, at *9 (N.D. Ohio Mar. 27, 2017).  In the Sixth Circuit, a court considering a motion to compel arbitration "has four tasks":

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout*, 228 F.3d at 714); *accord*

*Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio 2009).  The third and fourth factors are undisputed here, however, and therefore are not addressed at length in this brief.

The parties may agree to delegate the second inquiry (arbitrability) to the arbitrator.  *See Rent-A-Ctr., W., Inc. v. Jackso*n, 561 U.S. 63, 68 (2010).  They may do so in several ways, such as by expressly delegating or incorporating into their agreement the AAA's rules, which delegate arbitrability.  *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020). When the parties agree to delegate threshold issues, the Court may determine *only* whether an arbitration agreement exists, because, if one does exist, the arbitrator must decide all other issues. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (holding that courts may not "override" agreement to delegate).

Finally, the FAA embodies a national policy favoring arbitration and creates a presumption of arbitrability.  *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.");  *Stachurski*, 642 F. Supp. 2d at 764.   "The [FAA] was intended to 'revers[e] centuries of judicial hostility to arbitration agreements,' by 'plac[ing] arbitration agreements upon the same footing as other contracts.'"  *Shearson*, 107 S. Ct. at 2337.  The FAA, which leaves "no place for the exercise of discretion," "mandates that district courts shall direct the parties to proceed to arbitration on issues" subject to "an arbitration agreement."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008).

## C.    The Court Should Compel Arbitration and Dismiss the Case.

A valid agreement exists requiring Plaintiff to arbitrate disputes with Charter, which she separately acknowledged.  Plaintiff nevertheless declined to opt out of arbitration despite ample opportunity to do so.  And the Agreement delegates arbitrability to the arbitrator.  That alone requires the Court to compel arbitration under binding Supreme Court authority, as the only issue

the Court may reach is contract formation. But even if the Court could reach issues such as enforceability and scope, (a) the Agreement is enforceable and (b) this dispute falls squarely within the scope of the arbitration terms.

1.      **The Parties Agreed to Arbitrate.**

Under basic principles of contract law, an agreement to arbitrate disputes exists between the parties. *See supra* at III.A.1. As the Sixth Circuit has held, a valid agreement to arbitrate exists under Ohio law where there is "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Uszak v. AT & T Mobility Servs. LLC*, 658 F. App'x 758, 761 (6th Cir. 2016) (quoting *Rayess v. Educ. Comm'n for Foreign Med. Graduates*, 134 Ohio St. 3d 509, 512 (2012)).

All elements establishing a valid agreement to arbitrate exist here. Plaintiff received a copy of the Agreement on Spectrum's website, accepted its terms by checking the box "I accept these agreements," and acknowledged in a separate document her acceptance of Charter's terms of service, including the mandatory arbitration provision. (Flores Decl. ¶ 10.b.); *see Carey*, 2017 WL 1133936, at *4 (under Ohio law, "clicking through relevant screens, as plaintiff did here in order to sign up to use the uberX product, 'is an acceptable method to manifest assent to the terms of an agreement []' even where disputed terms are contained in a hyperlink"); *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 219 (Ohio Ct. App. 2015) (agreeing to online terms constitutes acceptance, including of arbitration provisions) (citations omitted).

The consideration element is met, as well. The parties both agreed to arbitrate—the terms are not one sided—which constitutes sufficient consideration. (Flores Decl. ¶ 6, 10.b., Ex. A § 29); *see Uszak*, 658 F. App'x at 763 ("A mutual agreement by both parties to submit a claim to arbitration is sufficient consideration under Ohio law.") (quoting *Dantz v. Am. Apple Group, LLC*, 123 Fed. Appx. 702, 708–09 (6th Cir. 2005)). Charter's provision of services is also good consideration. *See id.* And there can be no question of the contract's "legality." *Id.* at 761.

And Plaintiff not only accepted the Agreement; she declined to opt out of arbitration even

though she could have easily done so.  The right to opt out is conspicuously displayed in capital letters on the first page of the Agreement and refers Subscribers to Section 29 of the Agreement for further details.  (Flores Decl., Ex. A at 1.)  Under the Agreement, Plaintiff could have opted out within 30 days of accepting it; all she had to do was notify Charter of her decision.  (*Id.*, Ex. A § 29.)  She chose not to do so, confirming that she agreed to arbitrate.  (*See id.* ¶ 10.d.); *see also AT&T Mobility Servs., LLC v. Boyd*, No. 1:19CV2539, 2020 WL 6203831, at *12 (N.D. Ohio Oct. 22, 2020) (holding that plaintiff's choice to continue his employment after receiving notice of opportunity to reject arbitration agreement constituted plaintiff's assent to arbitration).

### 2.     The Parties Delegated the Threshold Issues of Arbitrability to the Arbitrator.

The Agreement delegates all threshold questions, including arbitrability, to the arbitrator. Under well-established Sixth Circuit and Supreme Court authority, the Court should compel arbitration for this reason alone and allow the arbitrator to decide any remaining issues.

The Arbitration Provision explicitly states that "all issues are for the arbitrator to decide (including the scope of the arbitration clause)."  (Flores Decl., Ex. A. § 29.)  This express delegation clause shows that the parties "manifestly intended" to delegate arbitrability.  *See Milan Exp. Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 485 (6th Cir. 2014) (concluding the "parties manifestly intended to submit the threshold question of arbitrability to the arbitrator" by agreeing that any disputes would be "determined exclusively by binding arbitration" "without resort to litigation"); *Carey*, 2017 WL 1133936, at *5 (finding a similar delegation provision "clearly and unmistakably evince[d] the parties' intent to submit all issues under the Agreement, including issues of arbitrability, to the arbitrator") (collecting cases).

A second, independent reason that all threshold issues are delegated to the arbitrator is that the parties incorporated the American Arbitration Association's rules into the Agreement.  (Flores Decl., Ex. A § 29.)  The AAA's rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, *including . . . arbitrability*."  AAA Consumer Rule 14(a)-(b) (emphasis added), available at https://www.adr.org/sites/default/files/CommercialRules_Web-

Final.pdf.[1]  As the Sixth Circuit, this District, and courts throughout the country have held, Plaintiff and Charter therefore agreed to delegate all threshold issues to the arbitrator.  *Blanton*, 962 F.3d at 846 (collecting cases); *Tokio Marine Specialty Ins. Co. v. S. Chicago Prop. Mgmt. Co.*, No. 5:20-CV-854, 2020 WL 5877598, at \*4 (N.D. Ohio Oct. 2, 2020) (compelling arbitration where parties delegated by incorporating AAA Rules).

Under binding Supreme Court authority, then, the Court should end its inquiry after determining that an arbitration agreement exists, honor the parties' agreement, delegate threshold issues to the arbitrator, and compel arbitration.  *Schein*, 139 S. Ct. at 529 (reversing court of appeals and holding that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" "even if it thinks that the argument that the arbitration agreement applies to a dispute is wholly groundless").

### 3. In Any Event, The Arbitration Terms Are Enforceable and This Dispute Falls Squarely Within Their Scope.

Given the parties' agreement to delegate threshold issues to the arbitrator (including validity and scope), the Court's inquiry should end upon determining that an agreement to arbitrate exists.  For completeness, however, the Agreement is valid and this dispute falls within the scope of the arbitration terms.

First, Charter's arbitration terms are valid and enforceable, as courts throughout the country have routinely held.  *Moran v. Charter Commc'ns, Inc.*, No. SACV2000303JVSJDEX, 2020 WL 5833640, at \*5 (C.D. Cal. June 11, 2020) (compelling arbitration under same agreement); *see also Cova v. Charter Commc'ns, Inc.*, No. 4:16-CV-469-RLW, 2017 WL 666097, at \*5 (E.D. Mo. Feb. 17, 2017) (compelling arbitration under a nearly identical Charter agreement); *Hartman v. Charter Commc'ns, Inc.*, No. 1:14-CV-00243-MR-DLH, 2015 WL 1756437, at \*1 (W.D.N.C. Apr. 17, 2015) (same); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-CV-1724-L-MSB, 2019 WL 2269974, at \*1 (S.D. Cal. May 28, 2019) (compelling arbitration under a Charter subsidiary's similar

---

[1]     *See also* AAA Commercial Rule 7(a)-(b), available at https://www.adr.org/sites/default/files/Commercial-Rules-Web.pdf.

agreement); *Hart v. Charter Commc'ns*, Inc., No. SACV170556DOCRAOX, 2017 WL 6942425, at *1 (C.D. Cal. Nov. 8, 2017), *aff'd*, 814 F. App'x 211 (9th Cir. 2020) (same).

Indeed, well-settled principles of contract law confirm the validity of the arbitration agreement. Charter's arbitration terms do not unilaterally benefit Charter—both the subscriber *and Charter* are required to arbitrate. *See Uszak*, 658 F. App'x at 764 (mutual arbitration clause valid under Ohio law). And Charter's arbitration terms are not "take-it-or-leave-it," but give subscribers like Plaintiff ample opportunity to opt out by merely sending an email or letter within 30 days. (Flores Decl., Ex. A § 29); *see also Bruster v. Uber Techs. Inc.*, No. 15-CV-2653, 2016 WL 4086786, at *2 (N.D. Ohio Aug. 2, 2016) (under Ohio law, holding arbitration agreement valid where plaintiff received sufficient notice of its terms and meaningful opportunity to opt out).

Second, this dispute falls within the scope of the arbitration terms in the Agreement. Those terms govern "disputes and claims *arising out of or relating to* these General Terms, the Services, the Equipment, or marketing of Services Subscriber has received from Spectrum." (Flores Decl., Ex. A § 29 (emphasis added).) The Acknowledgment explains that the Agreement "include[s] a mandatory arbitration requirement with respect to *all disputes*." (*Id.*, Ex. B (emphasis added).) This broad language creates a presumption of arbitrability, as the Sixth Circuit has specifically held in another case involving similar language. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003) ("[A]n arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'") (collecting cases) (citation omitted).

Given the breadth of Charter's arbitration terms, this dispute plainly falls within them. Plaintiff asserts TCPA violations based on calls Charter allegedly placed to her cell phone. But Plaintiff agreed Charter "may use automated dialing systems or artificial or recorded voices to contact Subscriber or leave Subscriber messages." (Flores Decl., Ex. A § 14.) Her claim that precisely such calls violated the TCPA therefore directly relates to the parties' rights and obligations arising out of the Agreement *and* the terms of the Agreement itself. This dispute falls within the scope of the arbitration terms for this reason alone. *Whaley v. T-Mobile, USA, Inc.*, No.

13-31, 2013 WL 5155342, at *2-3 (E.D. Ky. Sept. 12, 2013) (compelling arbitration in putative TCPA class action because plaintiff agreed to contact by "pre-recorded or artificial voice or text messages" and TCPA claim therefore could not be resolved "without examining the agreement between the parties").

Plaintiff also agreed to arbitrate disputes about "Services" provided by Charter.  (Flores Decl., Ex. A § 29.)  And the calls Charter allegedly made to Plaintiff were about Charter "services" for another subscriber and collecting payment for those services.  Dkt. 1 ¶¶ 15-16 (alleging calls asking Plaintiff to "Please give Spectrum a call back at 844-206-9035 regarding your account information").  This, too, independently establishes that the dispute here falls within the arbitration terms.  *See Drozdowski v. Citibank, Inc.*, No. 2:15-cv-2786, 2016 WL 4544543, at *7-8 (W.D. Tenn. Aug. 31, 2016) (compelling arbitration in putative TCPA class action where consumer alleged calls about payment for defendant's services under agreement).

Finally, the Sixth Circuit requires arbitration "unless it may be said with *positive assurance* that the arbitration clause is *not susceptible* of an interpretation that covers the asserted dispute." *Bakery, Confectionery, Tobacco Workers & Grain Millers, Int'l Union AFL-CIO v. Kellogg Co.*, 904 F.3d 435, 442 (6th Cir. 2018) (compelling arbitration where contract was ambiguous, open to two interpretations, and included language that raised doubts about whether the parties agreed to arbitrate disputes because the court must "resolve any doubts in favor of coverage") (citations omitted; emphasis added).  Thus, to the extent there are "*any doubts* concerning the scope of arbitrable issues," they must be "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 941 (1983) (emphasis added).[2]

In sum, the Court need not consider the validity and scope of the arbitration terms given

---

[2] The "third" factor in the Sixth Circuit's analysis—"whether Congress intended" federal "claims to be nonarbitrable"—is delegated to the arbitrator. *McGee*, 941 F.3d at 865.  In any event, this factor is a nonissue because "Congress has not stated the TCPA claims are nonarbitrable." *Reo v. Palmer Admin. Servs.*, 770 F. App'x 746, 748 (6th Cir. 2019) (affirming district court's decision to compel arbitration of TCPA claims) (quotation omitted). *McCormick v. Citibank, NA*, No. 15-CV-46-JTC, 2016 WL 107911, at *5 (W.D.N.Y. Jan. 8, 2016) (collecting cases).

the parties' agreement to delegate those issue to the arbitrator.  But even if it did, the arbitration terms are valid and require the arbitration of this dispute.  The Court should therefore dismiss this case.  *Eberhard v. Chicago Title Ins. Co.*, No. 1:11 CV 834, 2012 WL 13029534, at *8 (N.D. Ohio Mar. 31, 2012) (Oliver, S.).

## IV.   ALTERNATIVELY, THE COURT SHOULD STAY THE CASE

The Court should compel arbitration and dismiss this action, as explained above.  If for some reason it does not, the Court should stay the proceedings pending the Sixth Circuit's decision in *Lindenbaum*, which could entirely dispose of this case.

Plaintiff's only claim is that Charter violated the TCPA's robocall restriction, 47 U.S.C. § 227(b)(1)(A)(iii), by allegedly calling her cell phone with an artificial or pre-recorded voice without consent.  But in *AAPC*, the Supreme Court held that the robocall restriction is an unconstitutional speech restriction under the First Amendment.  140 S. Ct. 2335, 2346.  Chief Judge Gaughan accordingly dismissed TCPA claims in a similar case, holding that because the robocall restriction "was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."  *Lindenbaum*, 497 F. Supp. 3d at 298.  Briefing in an appeal of *Lindenbaum* to the Sixth Circuit is complete, as noted above.  The Sixth Circuit will soon decide whether Judge Gaughan's conclusion—that courts lack subject matter jurisdiction over alleged violations of the TCPA's robocall restriction during the period the law was unconstitutional, as here—will be the binding law of this Circuit.

The Court should therefore stay this case pending *Lindenbaum*, just as two district courts in this Circuit have done, because the Sixth Circuit's decision could entirely resolve this matter and all relevant factors favor a stay.

## A.   Background Relevant to Motion to Stay.

### 1.   Plaintiff Alleges One Claim Based on the TCPA's Robocall Restriction.

Plaintiff alleges that in January 2021, Charter began calling her on her cellular number (number xxx-xxx-8573) about another subscriber's account and the balance owed on it.  Dkt. 1 ¶ 15.  Plaintiff alleges that these debt collection calls violated the TCPA because they used an

"artificial or prerecorded voice." *See id*. ¶ 55. She also alleges that she never provided prior consent to receive the calls. *Id*. ¶¶ 32, 57-58.

Based on these allegations, Plaintiff asserts a TCPA claim based on violations of the robocall restriction (47 U.S.C. §§ 227(b)(1)(A)(iii)), which prohibits most calls to cellular phones using a pre-recorded voice without prior express consent. *See id*. ¶¶ 54-60. Plaintiff also asks the Court to certify a nationwide class going back to April 16, 2017, based on alleged violations of the robocall restriction through use of a pre-recorded voice. *Id*. ¶ 40.

### 2.      The Supreme Court's Holding in *AAPC*.

In *AAPC*, six Justices agreed that the robocall restriction, the sole basis for Plaintiff's claims, was an unconstitutional content-based restriction when combined with the government debt exception. *AAPC*, 140 S. Ct. at 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). Specifically, Congress added an exception to liability under the robocall restriction for government debt collectors in 2015. *Id.* The robocall restriction combined with the government debt exception, the Court held, "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *See id.* at 2344. Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass. *Id.* Rather than scrap the entire statute, the Court opted to save it by severing the government debt exception prospectively. *Id.* at 2352-54.

Several district courts across the country, including Judge Gaughan in *Lindenbaum v. Realgy*, have since held that robocall restriction is unenforceable for calls that occurred during the period it was an unconstitutional speech restriction, as here. 497 F. Supp. 3d 290, 298 (N.D. Ohio 2020); *see also Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 507 (E.D. La. 2020); *Cunningham v. Matrix Fin. Servs.*, __ F. Supp. 3d ___, 2021 WL 1226618, at *1 (E.D. Tex. 2021).

### 3.      The Sixth Circuit's Pending Decision in *Lindenbaum*.

In *Lindenbaum*, Chief Judge Gaughan considered whether the court has subject matter jurisdiction over claims based on the TCPA's robocall restriction for calls that occurred during the period *AAPC* held the robocall restriction was unconstitutional. 2020 WL 6361915, at *7. Judge

13

Gaughan held that the court lacked subject matter jurisdiction because "severance of the government-debt exception applies only prospectively" and thus the TCPA was unconstitutional at the time the alleged calls violated the robocall restriction.  *Id.* at *3.  "The insertion of the government-debt exception transformed" the robocall restriction, the court explained, "into an unconstitutional content-based restriction." *Id.* at *7.  The only way to uphold "equal treatment" under the First Amendment, the court continued, is to treat the favored speakers (i.e., callers seeking to collect government backed debt) and disfavored (i.e., callers seeking to collect private debt) equally.  *Id.*  To do otherwise would perpetuate the same content-based discrimination the Supreme Court expressly recognized and tried to cure prospectively in *AAPC*.  *Id.*  As Judge Gaughan explained, "the fact remains that at the time defendant[] engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction.  The Court cannot wave a magic wand and make that constitutional violation disappear."  *Id.*  The court accordingly dismissed the plaintiff's case for lack of subject matter jurisdiction.  *Id.*

The plaintiff appealed to the Sixth Circuit.  *Lindenbaum v. Realgy*, No. 20-4252 (6th Cir. Jan. 25, 2021).  The appeal has attracted considerable national attention, with more than a dozen amicus briefs filed.  *See* docket, *id.*  Among them is one from the ACLU, along with Constitutional Law Professors Erwin Chemerinsky, Andrew Geronimo, G.S. Hans, Rodney A. Smolla, Nat Stern, and Eugene Volokh, urging the Sixth Circuit to affirm Judge Gaughan's decision.  *Id.*, Dkt. 37. As their brief explains, Judge Gaughan is correct that parties cannot be liable under the robocall restriction during the period it was unconstitutional because permitting liability for violating the robocall restriction while government collectors were exempt would "provide a curious period of enforceability for even obviously unconstitutional laws: a disfavored speaker, or a vulnerable class of person, could still be subject to liability for violating a statute that was plainly unconstitutional at the time the violation took place."  *Id.* at 15.

**B.**    **The Applicable Legal Standard: The *Landis* Doctrine Compels a Stay Here.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Ohio Env. Council v. U.S. Dist. Court*, 565 F.2d 393 (6th Cir. 1977) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  That decision "ordinarily rests with the sound discretion of the District Court."  *Id.*  In making that decision, "courts weigh [1] the potentiality of another case having a dispositive effect on the case to be stayed, [2] the judicial economy to be saved by waiting on a dispositive decision, [3] the public welfare, and [4] the hardship/prejudice to the party opposing the stay, given its duration." *Schartel v. OneSource Tech., LLC*, No. 1:15 CV 1434, 2015 WL 7430056, at \*1 (N.D. Ohio Nov. 17, 2015) (granting stay pending Supreme Court case).

Applying these so called "*Landis*" factors, courts in this District routinely stay proceedings pending rulings from higher courts that might have a bearing on a pending case.  *See, e.g.*, *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, No. 3:09CV1071, 2010 WL 55973, at \*5 (N.D. Ohio Jan. 5, 2010) (staying case pending decisions of the Fourth and Eighth Circuits that "will be significant, and potentially preclusive" as the plaintiff's claims); *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (granting stay pending case that "may have a dispositive effect on the instant case").

**C.    If the Court Does Not Compel Arbitration, All Relevant Factors Favor a Stay.**

Because the issue the TCPA's constitutionality at the time of the alleged calls giving rise to Plaintiff's claims is squarely before the Sixth Circuit in a fully briefed appeal, the Sixth Circuit's ruling in *Lindenbaum* could dispose of this entire case.  Judicial economy therefore favors a stay. The public interest likewise favors of a stay because the Sixth Circuit's decision will resolve a fundamental question under the First Amendment and may render it unnecessary for the Court to expend any additional resources on this matter.  Finally, a stay will not prejudice Plaintiff because it will be short and this case is in its early stages.

**1.    *Lindenbaum* Could Dispose of This Entire Case.**

If the Sixth Circuit affirms Chief Judge Gaughan's dismissal in *Lindenbaum*, this Court will be likewise required to dismiss this case for lack of subject matter jurisdiction.  The fact that the Sixth Circuit's decision "has the potential to be completely dispositive . . . weighs quite heavily

15

in favor of a stay." *Michael*, 325 F. Supp. 2d at 831; *see also Schartel*, 2015 WL 7430056, at *2 (granting stay where decision was potentially dispositive).[3]  Two courts in this Circuit, including one in this District, have already granted both plaintiffs' and defendants' motions to stay in TCPA actions pending the Sixth Circuit's decision in *Lindenbaum*.  *See Dickson v. Direct Energy, LP*, No. 5:18-cv-182, Dkt. 133 (N.D. Ohio Jan. 15, 2021); *Saunders v. Dyck O'Neal, Inc.*, No. 1:17-CV-003350-GJQ-RSK, Dkt. 202 (W.D. Mich. May 20, 2021).  The Court should do the same here.

The significant likelihood that the Sixth Circuit will affirm this Court's decision—that courts lack subject matter jurisdiction to enforce the TCPA during the period it contained an unconstitutional content-based, discriminatory speech restriction—further favors staying this case. Two other published district court cases thoroughly considering this issue reached the identical conclusion as *Lindenbaum*.  *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 507 (E.D. La. 2020); *Cunningham v. Matrix Fin. Servs., LLC*, __ F. Supp. 3d ___, 2021 WL 1226618, at *1 (E.D. Tex. 2021).  In *Creasy*, Judge Feldman concluded that imposing liability for speech that allegedly violates an unconstitutional, content-discriminatory statute is irreconcilable with Supreme Court First Amendment precedent and fundamental due-process and equal protection principles.  *Creasy*, 2020 WL 5761117, at *3 ("a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion") (citing *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972)).  As such, although *AAPC* remedied the robocall restriction by severing the government debt exception, Judge Feldman explained, the robocall restriction is "void" during the time it contained the exception "because it itself was repugnant to the Constitution."  *Id.* at *5

---

[3]     *See also Compressor Eng'g Corp. v. Thomas*, No. 10-10059, 2016 WL 438963, at *5 (E.D. Mich. Feb. 3, 2016) (staying TCPA action pending *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCX), 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (collecting cases from district courts of California, Florida, and Virginia staying TCPA cases pending *Spokeo*).  In fact, courts often stay individual (non-class) cases in which an intermediate appellate court is poised to provide mere *guidance* on an issue that would not necessarily be dispositive (like when courts routinely stayed TCPA cases based on a then-forthcoming decision on the proper definition of an ATDS).  *See, e.g.*, *Ricketts v. Consumers Energy Co.*, No. 16-cv-13208, 2017 WL 2351731, at *2 (E.D. Mich. May 31, 2017) (staying TCPA action pending D.C. Circuit decision).

(emphasis in original). Judge Feldman thus held that dismissal was the "constitutionally dictated result." *Id.*

Judge Mazzant, relying on *Creasy* and *Lindenbaum*, reached the same result, holding that "fundamental legal logic dictates that whenever the government-debt exception actually interacted with the pre-2015 version of § 227(b)(1)(A)(iii), all violations of § 227(b)(1)(A)(iii) were legally flawed, as they are unable to withstand constitutional scrutiny." *Cunningham*, 2021 WL 1226618, at *9. As a result, the court dismissed the case for lack of subject matter jurisdiction, as well. *Id.*

In sum, because the Sixth Circuit's decision in *Lindenbaum* could entirely dispose of this case, this factor supports staying this case.

### 2. A Stay Will Promote Judicial Efficiency and Preserve Judicial Resources.

Second, granting a stay here would promote judicial economy. The Sixth Circuit's decision in *Lindenbaum* on whether the court has subject matter jurisdiction, a pure "question of law," "could negate the need for this Court to delve into" this case. *See Michael*, 325 F. Supp. 2d at 832-33. It therefore "makes little sense to undertake the herculean task of plodding through" this matter—and passing on a complex question of jurisdiction that the Sixth Circuit is about to decide—"when one decision [] could invalidate the entire case." A stay is particularly appropriate here because this is a putative nationwide class action that could morph into a "massive and complex" endeavor. *See Michael*, 325 F. Supp. 2d at 832.

### 3. A Stay Furthers the Interests of the Public and Non-Parties.

The public interest likewise favors a stay because the appeal in *Lindenbaum* concerns a regulation of speech. It is axiomatic that there is a "significant public interest" in upholding free speech principles. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). In turn, the "ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [the parties], but also the interests of other people subjected to the same restrictions." *Id.*; *see also Ranchers-Cattlemen Action Legal Fund v. Perdue*, No. CV 16-41-GF-BMM, 2017 WL 2671072, at *8 (D. Mont. June 21, 2017), *aff'd sub nom*, 718 F. App'x 541 (9th Cir. 2018) ("Freedom of speech represents a fundamental right. There exists a significant

17

public interest in upholding free speech principles.").  Because the TCPA provision at issue is inarguably a restriction—*i.e.*, a "ban"—on certain speech, to allow a party to rely on that regulation on an interim basis in litigation, only to have it overturned, would significantly undercut the public interest.

The public also has a strong interest in the efficient and fair administration of justice, and in ensuring a uniform interpretation of the law.  *See, e.g.*, *Nuccio v. Duve*, No. 7:13-CV-1556, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) ("Staying this action [pending the outcome of another case] will serve the interest of the courts, non-parties, and the public by promoting the efficient use of judicial resources and 'minimiz[ing] the possibility of conflicts between different courts'").  Accordingly, the interests of the public and non-parties also favor of a stay.

**4.      A Stay Poses No Risk of Damage or Harm to Plaintiff, but Defendant Will Suffer Hardship and Inequity If This Action Is Not Stayed.**

The potential prejudice to Plaintiff—if any exists at all—is minimal.  And any fair balancing here reveals that the three factors above would easily outweigh this final one.  Consider, for example, the limited nature of Charter's request: the stay would necessarily end when appeals conclude in *Lindenbaum*, and briefing is already complete in the Sixth Circuit.  *Georgia-Pac.*, 2010 WL 55973, at *4 ("[A] stay pending the outcome of two appeals will not 'place [the] case in limbo for years.' This stay is not indefinite and, in fact, briefing has already begun in both . . . appeals.").

This Court has, under similar circumstances, determined that "the possible prejudice to plaintiff that will result from a stay is minimal."  *Schartel*, 2015 WL 7430056, at *2 (granting stay where it "will not be extensive or of unlimited duration" because "all parties face the risk of unnecessary proceedings and expenses if the case is not stayed"); *see also Michael*, 325 F. Supp. 2d at 833.

Charter, on the other hand, will suffer hardship and inequity if this action is not stayed because it will be required to invest substantial resources litigating this putative nationwide class action, despite the probability that the Sixth Circuit will soon render that investment entirely

unnecessary.  That reality alone strongly supports a stay.  *See, e.g.*, *In re Sprouts Farmers Mkt., Inc. Employee Data Sec. Breach Litig.*, No. MDL 16-02731-PHX DLR, 2017 WL 3051243, at *1 (D. Ariz. May 24, 2017) (stating that the "worst possible outcome" would be for the Court to deny defendant's motion, "only to have the Supreme Court" invalidate the plaintiffs' position); *see also Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-cv-00711, 2015 WL 4602968, at *2 (E.D. Cal. Jul. 29, 2015) ("The Court sees no reason why Plaintiff should be allowed to conduct discovery on this large class thereby forcing Defendant to incur unnecessary expenses, until it can be established that this case will be proceeding forward").

Finally, the preliminary posture of this action also weighs against a finding of prejudice. *See, e.g.*, *Clark v. C.R. Bard, Inc.*, No. 4:18-CV-440, 2018 WL 3222642, at *2 (N.D. Ohio July 2, 2018) (granting stay and noting "Plaintiff, however, is not likely to suffer any hardship from a short delay. The case is in its infancy, as defendant has not even filed an answer, and the parties have yet to dedicate resources to discovery or dispositive motion practice."); *Tovar v. Hospital Housekeeping Sys.*, No. 09-03487, 2009 WL 10672526, at *4 (C.D. Cal. Nov. 2, 2009) (early procedural posture of a case "weighs against a finding of prejudice").[4]  Accordingly, given the absence of any potential prejudice to Plaintiff, the fourth factor also weighs heavily in favor of a stay.

## V.  CONCLUSION

For the foregoing reasons, the Court should compel arbitration and dismiss this case because an agreement between the parties requires arbitration and delegates all threshold issues,

---

[4]      If, in her effort to prematurely open class discovery and leverage a settlement, Plaintiff opposes a stay, she risks harm to all parties (herself included if, after further litigation, she discovers that she has no claim). *See, e.g.*, *Wright et al. v. EXP Realty, LLC*, No. 6:19-CV-01851, D.E. 99, p.2 (M.D. Fla. Feb. 7, 2020) (in granting stay, noting that proceeding without the benefit of *AAPC* decision would waste "the parties' time and energy").

including arbitrability, to the arbitrator.  In the alternative, the Court should stay this case pending *Lindenbaum*: The Sixth Circuit's decision could dispose of this entire case, and a stay will promote judicial economy, further the public interest, and not prejudice Plaintiff.

 

      Dated: June 11, 2021.

                            */s/ Joseph Scott Carr*_____
                            Joseph Scott Carr (0098247)
                            scarr@kcozlaw.com
                            Ryan D. Watstein (*pro hac vice* forthcoming)
                            rwatstein@kcozlaw.com
                            Alexander D. Terepka (*pro hac vice* forthcoming)
                            aterepka@kcozlaw.com
                            **KABAT CHAPMAN & OZMER LLP**
                            171 17th Street NW, Suite 1550
                            Atlanta, Georgia 30363
                            Telephone: (404) 400-7300

                            *Counsel for Charter Communications, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I certify that this case has not been assigned a specific track but this motion otherwise adheres to the page limitations set forth in Local Rule 7.1(f).

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2020, I filed the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

By:     */s/ Joseph Scott Carr*_____
        Joseph Scott Carr (0098247)